CHARLES GERDING, JR., Respondent, *v.* ISAAC K. FUNK, Appellant.

| 48 | 603 |
|----|-----|
| s163a.592 | |
| 48 | 603 |
| a169 NY | 572 |
| 48 | 603 |
| 84 | 393 |

*Agreement by the chairman of a reorganization committee, subject to its approval, to compensate an associate for services — effect of the delivery of securities therefor to the chairman — burden of proof as to their value — action on an account stated, sustained although the proof does not technically establish it — minutes of the reorganization committee as evidence.*

The chairman of a reorganization committee of an insolvent land company wrote to a person employed in the reorganization the following letter;

> "I hereby agree to give you $5,000 of the bonds of the Harriman and North-eastern Railroad, the same to be payment in full for withdrawal of suit for right of way claims and for help in various ways which you have rendered and may render to bring about the reorganization of the Land Company. This agreement is subject to the ratification of the reorganization committee, and I will do everything in my power to secure such ratification and the delivery of the bonds in April.
>
> "Yours very respectfully,
>
> "I. K. FUNK,
> "*Chairman.*"

In an action brought against the chairman by the assignee of the person so employed,

*Held,* that the promise contained in the letter was the individual promise of the chairman, and that the purpose of the provision in regard to ratification was to prevent the chairman's individual liability from arising until the committee had agreed to protect him;

That the reorganization committee having subsequently delivered to the chairman $5,000 of bonds, for the purpose of meeting this obligation, placing the matter entirely in his hands, an action would lie against the chairman individually, to recover the $5,000;

That, if the chairman desired to reduce the recovery below $5,000, the burden rested upon him to show that the bonds were worth less than their par value;

That the fact that the action was in form brought upon an account stated based upon the letter, which did not itself constitute an account stated within the strict meaning of that term, did not require the reversal of a judgment in favor of the plaintiff, where the complaint alleged all the facts upon which the plaintiff's right of action was based and evidence of the entire transaction between the parties was given on the trial, and substantial justice had been done;

That the minutes of meetings of the reorganization committee, at which both the plaintiff and his assignor were present, were not competent in evidence, where it appeared that such meetings took place after the assignment and that the plaintiff did not participate in the transactions at such meetings.

APPEAL by the defendant, Isaac K. Funk, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 25th day of January, 1899, upon the report of a referee.

*Wm. Hepburn Russell* [ *Wm. Beverly Winslow* with him on the brief], for the appellant.

*Abram Kling*, for the respondent.

GOODRICH, P. J. :

The facts are so fully stated in the opinion hereto appended of the referee, Cephas Brainerd, Esq., as not to require repetition.*

---

* The following is the opinion of the referee:

CEPHAS BRAINERD, Referee :

The complaint in this action alleges that one Charles Gerding performed work and services for the benefit of the defendant, and that on or about the 31st day of January, 1896, an account was stated between them, the result of which was that there was found due from the defendant to the plaintiff the sum of $5,000, which sum the defendant then and there promised and agreed to pay to the plaintiff in the bonds of the Harriman & Northeastern Railway Company, which said bonds were alleged by the defendant to be of the value of $5,000 ; that the defendant agreed to deliver said bonds to Gerding, but he has neglected and refused to do so, and that the claim was assigned by Gerding to the plaintiff before the bringing of the action, and the complaint demands judgment for the sum of $5,000, with interest.

The defendant denies the account stated, denies that he stated what the value of the bonds was, denies that he promised and agreed to deliver the bonds, and denies the assignment, and also alleges that it was not *bona fide.* It also alleges that the defendant was the chairman of the reorganization committee of the East Tennessee Land Company, being a voluntary organization of the creditors and stockholders of the company; that the company is insolvent and that he acted as chairman in his dealings with Gerding, and that Gerding knew these facts. It also alleges that Gerding induced Dr. Funk, as chairman, and that he, as such, agreed to employ him; and that while so employed he antagonized the interests of his employers and sought to bring about a failure of the objects which they had in view. It also alleges that a certain order — which will be hereafter referred to — was given him on the untrue representations made by the assignor Gerding to the defendant as to his service; that Gerding never performed completely the services which he agreed to render, and that the bonds never became due to him from the reorganization committee.

It appears from the evidence that there were several corporations existing in East Tennessee in which, in one way or another, the defendant was interested as were some of his friends; and that he was in fact the chairman of the reorganization committee composed of a number of persons. These corporations were in

Nor would any addition to that opinion be necessary except for points argued before this court.

It is true that the action was brought as upon an account stated, based on the letter of the defendant, dated January 31, 1896. A good definition of account stated is given in 1 Encyclopædia Pleading and Practice, 87, as follows : " An account stated is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions and promising payment."

The letter, however, contains a statement that the amount named is for " withdrawal of suit for right of way claims, and for help in various ways which you have rendered and may render," and that the agreement is " subject to the ratification of the reorganization committee."

---

litigation and various parties with whom the defendant was connected were engaged in efforts to extricate them from the difficulties in which they were involved. The assignor Gerding was, in some way or other, also interested in some of these enterprises.

It is clear from the proof that the assignor Gerding had been employed in these efforts at extrication by Dr. Funk either individually or as chairman of the reorganization committee.

The plaintiff's assignor claims that his employment commenced some time in 1894 and was continued on down to the early part of the year 1896; that when this arrangement was made with the defendant he distinctly stated that he would have nothing to do with the work of the reorganization committee as such, but that he would act only for and under Dr. Funk. The arrangement was finally put in writing on the 31st day of January, 1896, in the following letter, which was written upon the letter head of the reoganization committee:

" NEW YORK, *January* 31*st*, 1896.

"Mr. CHARLES GERDING,

          "Tremont, New York:

"DEAR SIR.—I hereby agree to give you $5,000 of the bonds of the Harriman and Northeastern Railroad, the same to be payment in full for withdrawal of suit for right of way claims and for help in various ways which you have rendered and may render to bring about the reorganization of the Land Company. This agreement is subject to the ratification of the reorganization committee, and I will do everything in my power to secure such ratification and the delivery of the bonds in April.

          "Yours very respectfully,

                    "I. K. FUNK,

                         " *Chairman.*"

Subsequent to the date of this letter further services were rendered by the assignor Gerding, and on the eighth of June Dr. Funk gave Mr. Gerding the fol-

If the agreement is not strictly in accordance with the definition quoted, because it referred to future services and was subject to ratification by other parties, it is sufficient to say that the complaint alleged the facts upon which the plaintiff's right of action was based ; that the case was tried on that theory ; that evidence of the whole transaction between the parties was given, and that substantial justice has been reached.    While an amendment would not be allowed to support the reversal of a judgment ( *Volkening* v. *De Graaf,* 81 N. Y. 268, 272), it may and should be allowed to sustain a judgment

lowing letter which is also written upon the letter head of the reorganization committee:

"F. L. HINE, Trustee,                                    NEW YORK, *June* 8, 1896.
          "Astor Place Bank,
                    "New York City:
"DEAR. SIR.— Please deliver to bearer, Mr. Charles Gerding, $5,000 of Harriman & Northeastern railroad bonds, and oblige
                              "Yours very respectfully,
                                        "I. K. FUNK,
                                              " *Chairman.*"

Mr. Gerding and the plaintiff took this letter to the person to whom it was addressed, Mr. F. L. Hine, who was holding the bonds as trustee for the persons interested, and demanded the bonds.  Hine declined to deliver them.  Thereupon, some months thereafter in 1896 Dr. Funk withdrew from the position of chairman of the reorganization committee, and all the property of the committee was turned over to Dr. Funk who agreed to finance the affairs of the committee, and held this property for his protection.  About that time Dr. Funk made a statement of the affairs of the reorganization committee to the persons interested in it, and in it appears the claim of Mr. Gerding, viz.: "Chas. Gerding, services, $5,000."

There is much conflict in the testimony in regard to the transactions connected with the claim asserted by the plaintiff, but it seems to me that the solution of the business, so far as respects the claim in this suit is concerned, is not difficult.

The letter of the thirty-first of January appears to be a promise on the part of Dr. Funk to deliver to Gerding $5,000 of bonds for services rendered and to be rendered and particularly for discontinuing a certain right of way suit.  The letter distinctly states that this arrangement between Dr. Funk and Gerding is subject to the ratification of the reorganization committee, which he agrees to do everything he can to procure.  It is apparent from Dr. Funk's own testimony that the ratification provided for in the letter was obtained in July, 1896, as $5,000 of bonds were then actually delivered to him as a separate transaction for the purpose of meeting this obligation.  The bonds were placed wholly at the discretion of Dr. Funk as to their delivery to Mr. Gerding; he was to be the sole judge in the matter.

of this character, where all the facts have been before the referee and by him passed upon.

Besides, it is well settled that under our present system of pleading a suit does not fail now, as formerly, because the plaintiff has made a mistake as to the form of remedy. (*Emery* v. *Pease*, 20 N. Y. 62.)

The referee, on conflicting evidence, found facts sufficient and necessary to sustain the judgment in favor of the plaintiff, and with such findings, after a careful examination of the voluminous record, we see no reason to interfere.

Upon this state of facts, as shown by the undisputed evidence, it seems to me clear that the obligation to deliver the bonds became a personal one on the part of Dr. Funk if these bonds had actually been earned and the contract was performed. It must be assumed upon the letter of January thirty-first that the services of Mr. Gerding down to the time it was written were satisfactory, and that letter states that it was hoped or expected that the bonds would be delivered by April first. They were not delivered at that date, and Gerding after the date of the letter continued to render services. On the eighth of June Dr. Funk delivered to Gerding the order to which I have referred. This order contains no reservation, and is a distinct and positive request to Mr. Hine to deliver the bonds.

I do not attempt to reconcile the contradictory evidence touching the verbal conditions and statements which are alleged to have been made at the time of the delivery of the letter of June eighth, but accept the order as importing just what on its face it purports to be. It is clear that at that time Gerding, the assignor, was entitled to the bonds; and it is very clear that, down to the time of the delivery of the order and the resignation of Dr. Funk as chairman, there was, so far as the written evidence discloses, no failure on the part of Gerding to do what belonged to him to do in that regard. It seems to be the clear import of the paper that at that time Gerding's services were complete. The late letters of Dr. Funk to Mr. Gerding all seem to proceed upon the idea that the services of the former had been faithful. On June second, shortly before the order was given, Dr. Funk wrote an earnest and friendly letter to Mr. Gerding which one would think could not have been written if Mr. Gerding had not been faithful to his employment. On the fifth of August, is another letter equally inconsistent with bad faith on the part of Mr. Gerding, and on September twelfth, about the time of the resignation of Dr. Funk, is another letter also quite inconsistent with bad faith on the part of Mr. Gerding. On September seventeenth is another in precisely the same tone in which he speaks "of the $5,000 of bonds that you (Gerding) are to receive." At that time Dr. Funk had in his hands the $5,000 of bonds already referred to and set apart as I have already said for this particular obligation.

After the action of the reorganization committee had been taken which followed

There are several objections to the exclusion of evidence, only one of which seems to us to require consideration. The defendant · offered in evidence the stenographer's minutes of three meetings of the reorganization committee of the Harriman and Northeastern Railroad Company's affairs, at which Gerding, senior, was present. Objection being made, the testimony was excluded, and properly. In the first place, Gerding, senior, assigned to the plaintiff, in June, 1896, the claim upon which this action is founded. The meetings in question occurred in April and May, 1897. Of course, no act or

the delivery of these two papers, Dr. Funk, having in his possession or under his control $5,000 in bonds, was requested to deliver them and he declined to do so.

It is strenuously insisted that the agreement represented by the letter of the 31st of January, 1896, was with the reorganization committee and not with Dr. Funk individually. The reorganization committee was a voluntary association composed of persons who were interested in the enterprises in Tennessee, residing in different parts of the country. It is not natural to suppose that a person making a contract in regard to the business which that committee had in hand would, if he gave the subject consideration, make a contract with the committee as such, having in view, as he must be supposed to have had, the difficulties attendant upon an attempt to enforce such a contract. Of course, it is not impossible that a capable business man would do this, but it is hardly a presumable thing for such a man to do.

The phraseology of the letter in its contracting portion is applicable solely to individuals. It starts out with "I;" that "I" meaning Dr. Funk, and the condition or reservation which is attached to it is of the same personal and individual character.

In *Buffalo Catholic Institute* v. *Bitter* (87 N. Y. 250), where this question was under consideration, the contract sued on and held to be an individual contract contained very much such a stipulation as the letter of Dr. Funk contains, in regard to ratification. That controversy, it is true, arose upon a demurrer to the complaint, but the agreement was a part of the complaint, and presented, so far as the face of the papers is concerned, precisely the question that is here exhibited. The question of the construction of the contract in this regard was distinctly raised in the points of counsel on both sides. The court, however, held that the contract was the personal contract of the individual who signed it and who attached to his name the descriptive words " Pres. of Buffalo Catholic Inst."

In *First Nat. Bank* v. *Wallis* (150 N. Y. 455), which was an action on a promissory note upon one end of which was printed " Wallis Iron Works," and which was signed " William T. Wallis, President; George T. Smith, Treasurer," the court held that it was the note of the individuals.

In *Casco National Bank* v. *Clark* (139 N. Y. 307) upon the end of the note in question was printed " Ridgewood Ice Co.," and it was signed " John Clark Prest.," at one corner and " E. H. Close, Treas.," at the other. The court

declaration of Gerding, senior, made after he parted with the cause of action, could be received to defeat the claim. Nor does it make any difference that Gerding, junior, also was present. It does not appear that he participated in the discussions at any of the meetings. Mere silence on his part cannot be construed into an admission to defeat the claim which had already passed to him under the assignment. The promise of the defendant or "account stated" was dated January 31, 1896. It is true that it contained a claim making the promise subject to the ratification of the reorganization com-

---

say (p. 312): "The appearance upon the margin of the paper of the printed name 'Ridgewood Ice Company' was not a fact carrying any presumption that the note was, or was intended to be, one by that company."

It seems unnecessary to multiply citations on this point. I think upon settled law that the promise is the individual promise of Dr. Funk. One would think that had he intended to avoid personal responsibility, and place that responsibility upon his associates collectively, his familiarity with affairs would have led him to use words quite different from those employed in the letter.

This conclusion is quite in harmony with the evidence in the case. Mr. Gerding, the assignor, stated on cross-examination that he informed Dr. Funk right along that he would act for him, but that he would not act for the committee. His testimony is not contradicted by the defendant, though his recollection is that these declarations of the assignor, Gerding, were made subsequent to the 31st day of January, 1896.

When the committee came to act, so far as the testimony in the case shows, upon this claim of Gerding, it placed the $5,000 of bonds in Dr. Funk's hands. They were absolutely under his control, thus going upon the idea, as it seems to me, that its act was simply for the purpose of protecting Dr. Funk in the performance of his contract. That is to say that the provision in the letter in regard to ratification was a provision inserted by Dr. Funk for his protection as regards his associates. The contract was not to be, in effect, a contract until the committee had stated to him that it would protect him. It seems to me that this is the full scope of the reservation in the letter.

In this aspect of the case then, under the complaint as it is framed, it seems to me that Mr. Gerding, the assignee, is entitled to recover.

I understand the rule in regard to a recovery of money in such an action as this to be well summarized in *Nininger* v. *Banning* (7 Minn. 274, 283); "Where the property sued for in trover is a chose in action, as a bill, note, bond or other security for the payment of money, it seems that the measure of damages is, *prima facie*, the amount due on the security, the defendant being at liberty to reduce that valuation by evidence showing payment, the insolvency of the maker, or any fact tending to invalidate the security." (See, also, *City of Winona* v. *Minn. Ry. Co.*, 29 Minn. 68, 76.)

mittee. But it is evident that there was such ratification, inasmuch as before the meetings in question the committee had turned over to the defendant, as a separate transaction, $5,000 of the bonds after he had rendered an account in which the claim of Gerding for $5,000 for services was included.

Besides, we cannot find anything in the report of the meetings which tended to prove bad faith on the part of the plaintiff, as alleged in the answer. It is true that certain statements were made by some one of the committee, but it appears by the report that

The Court of Appeals, in *Booth* v. *Powers* (56 N. Y. 22), holds the same view, and applies it to actions other than those known technically as in trover. If, therefore, Dr. Funk desired to reduce the recovery below the par value of the bonds, the burden rested upon him to show that they were worth less than their face, viz., $5,000.

As to the question of the assignment, dated the 15th of June, 1896, it is adequate, in my judgment, to carry the claim to the assignee and estop the assignor and I must hold that the title passed to plaintiff.

Now as to the defenses. The statement which I have already made seems to me to establish the proposition that Dr. Funk is here personally liable for this sum if any one is liable.

There is no evidence in the case showing that the reorganization committee, as such, or any member of it, ever became a party to the agreement represented by the letter of the thirty-first of January, and the letter itself does not go upon the ground that the organization or the several individuals composing it became responsible; but, on the contrary, as it seems to me, it goes upon the ground that Dr. Funk is the responsible party when the transaction was ratified by the reorganization committee, and that ratification took place when the $5,000 of bonds were placed in Dr. Funk's hands.

The other claim is that Mr. Gerding not only failed to perform his contract, but that he also exerted himself to defeat the purposes of the reorganization committee.

I cannot sustain this defense upon the evidence, for it appears to me that the action of Dr. Funk, in giving the letter of the thirty-first of January and then in giving the order, constitutes very clearly a declaration that at the time the services were satisfactory, and his subsequent letters confirm this view. It is clearly established that the right of way suit was discontinued. How important the services were that Mr. Gerding rendered it is impossible to determine from the evidence, nor is it important that I do so. The parties must be presumed to have had all that matter before them when the papers were written and delivered. Besides that I think that the evidence as to the failure of Gerding to perform his duties, and his assuming an antagonistic position to that which it was his duty to assume, is too indefinite and too uncertain to justify a finding against him in that regard.

These observations lead me to the conclusion that judgment must be ordered for the plaintiff for the sum of $5,000, with interest from the 1st day of August, 1896, amounting in all to $5,732.20, together with the costs of this action.

Gerding, senior, denied the truth of such statements. We do not find anything in the report which would have required the referee to find as matter of fact that Gerding, senior, had violated his agreement with the parties in interest.

The evidence, in our opinion, therefore, was properly excluded, and the judgment should be affirmed.

All concurred, except HIRSCHBERG, J., not sitting.

Judgment affirmed, with costs.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM H. ALLEN, Appellant, v. BERNARD J. YORK, President, and JOHN B. SEXTON and Others, Composing the Board of Police Commissioners of the City of New York, Respondents.

*Police force of New York city — transfer to, of a sergeant of the Flushing police force — his position on the New York force.*

The transfer of the members of the police force of the village of Flushing to the police force of the city of New York, by the operation of section 280 of the Greater New York charter, entitled the transferred members to retain the rank which they held as members of the village police force only until the board of police of New York city fixed their rank pursuant to the power conferred upon it by section 281 of the charter.

Where, upon the refusal of the board of police to recognize a sergeant thus transferred as a member of the police force of the new city, he obtains a peremptory writ of mandamus requiring the board of police to restore him "to the position of patrolman," and, after acting as patrolman for over a year, he applies to the board of police to be restored to the grade of sergeant, the action of the board of police in denying his application will be considered as a valid exercise of the power to fix his rank conferred upon that board by section 281 of the charter.

APPEAL by the relator, William H. Allen, from an order of the Supreme Court, made at the Queens County Special Term and entered in the office of the clerk of Queens county on the 9th day of January, 1900, denying the relator's motion for a peremptory writ of mandamus commanding the board of police commissioners of the city of New York to reinstate him in the grade and rank of a sergeant of police.